**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| HAMBI CETEWAYO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 24 CV 5467 |
| | ) | |
| NORTHEAST ILLINOIS REGIONAL | ) | |
| COMMUTER RAILROAD | ) | |
| CORPORATION d/b/a METRA, JAMES | ) | |
| KUDERNA, MARK ABERCROMBIE, | ) | |
| JOSHUA KLIMA, and M. ENGLE, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' MEMORANDUM OF LAW IN
SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

NOW COME Defendants, by and through the undersigned, and Pursuant to Rules 56.1(a)(2) of the General Rules of the United States District Court for the Northern District of Illinois in support of their Fed. R. Civ. P. 56 Motion for Summary Judgment, state as follows:

I.      **Introduction**

Defendants Abercrombie, Klima, and Engle are entitled to summary judgment because the undisputed facts establish that their actions were lawful and protected by qualified immunity. The officers had probable cause to remove and arrest Plaintiff for fare evasion and resistance, and their use of a single Taser deployment was objectively reasonable under the circumstances. No clearly established law in September 2022 prohibited these actions, and Plaintiff cannot show a violation of any constitutional right. Likewise, Plaintiff's malicious prosecution claim fails because probable cause supported the charges and there is no evidence of malice. Accordingly, judgment as a matter of law should be entered in Defendants' favor on all claims.

## II.    Facts

On September 6, 2022, Plaintiff was riding on Metra commuter train #417 at the Blue Island station in Cook County, Illinois. **Def.'s 56.1 Stmt of Mat. Facts, ¶ 5.** Shortly after boarding, Conductor Kuderna requested Plaintiff's ticket. *Id.*, **¶ 7.** Plaintiff did not present a valid ticket or proof of payment. *Id.* Although Plaintiff later claimed he had purchased an electronic ticket but was "having trouble with the internet," no ticket was shown. *Id.* It is undisputed that Metra requires passengers to present a valid ticket or pay the fare. *Id.*, **¶ 8.** When Kuderna insisted on seeing a ticket, Plaintiff became agitated, raised his voice, and directed expletives at the conductor, refusing to comply. *Id.*, **¶ 9.** Unable to obtain proof of fare, Kuderna requested police assistance, reporting that a passenger had "refused to pay" and was "combative." *Id.*, **¶ 11.** Plaintiff followed Kuderna into the adjacent car, yelling at him, berating him, and threatening him with physical harm. *Id.*, **¶ 10.**

Metra Police Sergeant Klima and Officers Engle and Abercrombie responded, arriving as train #417 pulled into the Blue Island Vermont Street station. *Id.*, **¶ 13.** Another passenger warned the officers to "be careful, he's a little rowdy." *Id.*, **¶ 14.**

Kuderna identified Plaintiff as the individual who refused to show a ticket and threatened him. *Id.*, **¶ 15.** After Kuderna identified Plaintiff, Sgt. Klima instructed Plaintiff to step off the train. *Id.*, **¶ 16.** Plaintiff refused, stating, "I'm not stepping off no train," and later declared, "You're gonna have to force me." *Id.*, **¶¶ 17-18.** Despite repeated commands, Plaintiff remained seated. *Id.*, **¶ 18.** When officers attempted to escort him off, Plaintiff actively resisted by dropping his weight, bracing himself in the seat, and pulling his arms away. *Id.*, **¶ 20.** Even with two officers, Plaintiff continued to resist. *Id.*

After multiple warnings, Sgt. Klima displayed his Taser and warned Plaintiff to comply. *Id.*, ¶ **22.** Plaintiff responded, "Tase me." *Id.*, ¶ **23.** Sgt. Klima discharged his Taser, delivering one standard cycle that temporarily incapacitated Plaintiff. *Id.*, ¶ **25.** No additional force was used. *Id.*, ¶¶ **25-26.** Officers immediately handcuffed Plaintiff and escorted him off the train. *Id.*, ¶ **27.** The entire encounter lasted only a few minutes and was recorded on body-worn cameras. *Id.*, ¶ **28.** Medical assistance was promptly requested, and Plaintiff was transported to Ingalls Memorial Hospital for evaluation before being processed at the Metra Police facility. *Id.*, ¶¶ **29-30.**

Based on the conductor's statements and officers' observations, Plaintiff was charged with Theft of Services (720 ILCS 5/16-3(a)), Aggravated Assault of a Transit Employee (720 ILCS 5/12-2(b)(8)) and Resisting a Peace Officer (720 ILCS 5/31-1). *Id.*, ¶ **31.** These charges were later dismissed *nolle prosequi* on May 21, 2024. Plaintiff then filed this civil action under 42 U.S.C. §1983, alleging unlawful seizure, excessive force, and malicious prosecution, among other claims. *Id.*, ¶ **33.** The Court has previously dismissed Plaintiff's intentional infliction of emotional distress claim (Count III) and all Fourth Amendment claims against Conductor Kuderna. *Id.*, ¶ **34.**

### III. The Metra Officers are Entitled to Qualified Immunity.
#### A. The Qualified Immunity Legal Framework.

Qualified immunity shields government officials performing discretionary functions from civil liability so long as their conduct does not violate "clearly established" statutory or constitutional rights of which a reasonable officer would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The doctrine protects "all but the plainly incompetent or those who knowingly violate the law," giving officers room to make reasonable mistakes. *Malley v. Briggs*, 475 U.S. 335, 341 (1986); *Hunter v. Bryant*, 502 U.S. 224, 229 (1991). The analysis is an objective one, focusing on the legal reasonableness of the officer's action in light of existing law, not on the officer's subjective intent or good faith. *Anderson v. Creighton*, 483 U.S. 635, 639 (1987).

To defeat qualified immunity, a plaintiff must satisfy two prongs: (1) do the facts viewed favorably to the plaintiff show that the officer's conduct violated a constitutional right, and (2) if so, was that right "clearly established" at the time of the incident. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Courts have discretion to address these prongs in either order, and a court may grant qualified immunity on the "clearly established" prong alone without deciding the first prong. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). If either prong is not met then the officer is entitled to immunity. Regarding the second prong, the plaintiff bears the burden to identify precedent placing the constitutional question "beyond debate" for a reasonable officer. *Ashcroft v. al-Kidd*, 563 U.S. 731, 741-42 (2011). It is not enough to define the right at a high level of generality; rather, the inquiry must be particularized to the facts faced by the officers. *Anderson*, 483 U.S. at 640; *al-Kidd*, 563 U.S. at 742.

In short, qualified immunity protects reasonable decisions in gray areas: even officers who "reasonably but mistakenly conclude that probable cause is present" or that a certain degree of force is lawful remain immune if their decision was objectively reasonable in light of then-existing law. *Anderson*, 483 U.S. at 641; *Hunter*, 502 U.S. at 227.

### B. Plaintiff's Fourth Amendment Seizure Claim.

#### 1. Probable Cause Existed for Plaintiff's Removal and Arrest.

The Fourth Amendment permits officers to arrest an individual if they have probable cause to believe a crime is being committed. *United States v. Howard*, 883 F.3d 703, 707 (7th Cir. 2018). If the Metra officers had probable cause to arrest Plaintiff, "then a Fourth Amendment claim for false arrest is foreclosed." *Fleming v. Livingston Count, Ill.*, 674 F.3d 874, 878 (7th Cir. 2012) quoting, *Holmes v. Village of Hoffman Estates*, 511 F.3d 673, 679–80 (7th Cir.2007). "A police officer has probable cause to arrest when, at the moment the decision is made, the facts and

circumstances within her knowledge and of which she has reasonably trustworthy information would warrant a prudent person in believing that the suspect had committed or was committing an offense." *Qian v. Kautz*, 168 F.3d 949, 953 (7th Cir.1999) (citations omitted). This standard "does not require that the officer's belief be correct or even more likely true than false, so long as it is reasonable." *Fleming*, 674 F.3d at 879, quoting *Texas v. Brown*, 460 U.S. 730, 742 (1983).

Here, when the officers ordered Plaintiff off the train and then handcuffed him, they had ample probable cause. The undisputed facts show: (1) the Conductor credibly reported to the Officer Defendants that Plaintiff refused to produce a ticket or pay the fare, an act constituting theft of services under Illinois law; (2) Plaintiff's profane outburst, hostile demeanor, and explicit threats to harm the conductor provided cause to believe he had committed assault or at least was breaching the peace; and (3) Plaintiff then actively resisted the officers' lawful commands, committing resisting or obstructing a peace officer. **Def.'s 56.1 Stmt of Mat. Facts, ¶¶ 7, 9-10, 16-23.**

Even before the Plaintiff's resistance, the fare evasion alone was a misdemeanor offense justifying removal from the train. Any reasonable officer in these circumstances could conclude that Plaintiff had no right to remain on the train and was committing an arrestable offense. Probable cause is an objective standard based on the totality of the circumstances, and it does not require evidence sufficient to convict, only a probability or substantial chance of criminal activity. *United States v. Simon*, 937 F.3d 820, 829 (7th Cir. 2019); *Illinois v. Gates*, 462 U.S. 213, 246 (1983). Given the conductor's firsthand report and Plaintiff's behavior, a reasonable officer would believe that an offense (non-payment of fare) was occurring, which justified arresting Plaintiff. An arrest supported by probable cause is, by definition, a reasonable seizure under the Fourth Amendment. *Virginia v. Moore*, 553 U.S. 164, 171 (2008).

Because probable cause existed, Plaintiff cannot establish a Fourth Amendment violation for unlawful seizure. Indeed, even if actual probable cause were somehow debatable, the officers still had at least "arguable" probable cause, a reasonable basis to believe a crime was afoot, which is enough for qualified immunity. The Seventh Circuit and Supreme Court have made clear that officers are protected when they reasonably but mistakenly conclude that probable cause is present. *Hunter*, 502 U.S. at 227, 229.

Qualified immunity thus bars Fourth Amendment claims for false arrest so long as reasonable officers in the defendant's position could disagree as to the existence of probable cause in the situation at hand. Here, there is little room for disagreement: Plaintiff's refusal to pay fare and his refusal to obey train personnel provided a valid basis for his ejection; once he physically resisted the police, the officers were further justified in arresting him. In sum, the initial detention and subsequent arrest of Plaintiff were objectively reasonable and consistent with the Fourth Amendment.

**2. No Clearly Established Law Put the Metra Officers on Notice that Arresting Plaintiff Was Unlawful.**

Even assuming *arguendo* that a technical Fourth Amendment issue could be found with the arrest, the officers still prevail on the second prong of immunity. No clearly established precedent in September 2022 would have alerted a reasonable officer that removing a non-compliant, fare-evading person under these circumstances violated the Fourth Amendment. To the contrary, existing law supported the officers' belief that their actions were lawful.

For example, the Supreme Court has repeatedly held that officers are entitled to immunity when they mistakenly but reasonably believe probable cause exists. In *Hunter v. Bryant*, Secret Service agents arrested an individual they suspected (perhaps incorrectly) of threatening the President. The Court explained that even if probable cause was lacking in hindsight, the agents

were immune because "a reasonable officer could have believed the arrest to be lawful, in light of clearly established law and the information the officers possessed." *Hunter*, 502 U.S. at 227-29. The Court emphasized that qualified immunity "gives ample room for mistaken judgments" by protecting all but the plainly incompetent or those who knowingly violate the law. *Id*. at 229, quoting *Malley*, 475 U.S. at 341. This principle applies here. The Metra officers had a firsthand report of fare evasion and disorderly conduct, and they witnessed Plaintiff's resistance. **Def.'s 56.1 Stmt of Mat. Facts, ¶¶ 7, 9-10, 16-23.** At the very least, officers of reasonable competence could disagree on whether an arrest was justified, which means immunity applies.

### C. Plaintiff's Fourth Amendment Excessive Force Claim

#### 1. The Metra Officers Did Not Use Excessive Force.

Plaintiff also alleges that Sgt. Klima's use of a Taser amounted to excessive force in violation of the Fourth Amendment. Claims of excessive force during arrests or investigatory stops are analyzed under the Fourth Amendment's "objective reasonableness" standard, considering the totality of the circumstances. *Graham v. Connor*, 490 U.S. 386, 397 (1989). The Supreme Court in *Graham* identified several non-exclusive factors relevant to determining reasonableness: (1) the severity of the suspected offense, (2) whether the suspect poses an immediate threat to the safety of officers or others, and (3) whether the suspect is actively resisting or attempting to evade arrest by flight. *Id.* at 396. This analysis is fact-intensive, and it allows for the reality that police officers often must make split-second judgments in tense, rapidly evolving situations. *Id*. at 396-97.

With respect to the second factor, Plaintiff did not brandish a weapon or strike the officers, but he was verbally hostile and physically uncooperative in a passenger railcar, which is a confined, crowded space, with other passengers present nearby. His refusal to comply and aggressive tone suggested a potential for further escalation. While not an immediate lethal threat,

he posed a safety risk to the officers and to the nearby passengers by actively resisting three officers, potentially causing injury to them, himself, or other nearby passengers if the struggle continued.

Regarding the third factor, the video evidence and Plaintiff's own admissions show that Plaintiff was actively and continually resisting arrest. **Def.'s 56.1 Stmt of Mat. Facts, ¶¶ 7, 9-10, 16-23.** He refused repeated clear commands, clung to the train seat, and dared the officers to tase him rather than comply. **Def.'s 56.1 Stmt of Mat. Facts, ¶¶ 16-23.** He was not a compliant subject passively submitting to arrest; he was obstructing and defying at every step.

Given these circumstances, the decision to use a single Taser deployment to gain control of Plaintiff was a reasonable amount of force. The officers tried less forceful means, including verbal commands, hand-on-arm guidance, to no effect. The situation was at an impasse and delaying further posed risks to safety and order. Using the Taser quickly incapacitated Plaintiff without lasting harm, allowing officers to handcuff him without resorting to more dangerous physical force (for example, strikes, tackles, or a prolonged wrestling match in a passenger car). Notably, once Plaintiff was subdued and cuffed, no further force was used, and medical aid was promptly summoned. In other words, the force stopped as soon as it achieved its purpose. These facts support a finding that no excessive force occurred under Fourth Amendment standards: officers are permitted to use a reasonable level of force to overcome resistance during a lawful arrest. *Graham*, 490 U.S. at 396 (stating that, "Not every push or shove, even if it may later seem unnecessary, violates the Fourth Amendment").

**2. No Clearly Established Law Put the Metra Officers on Notice that Utilizing the Taser to Obtain Compliance Where Plaintiff was Actively Resisting was Unlawful.**

However, the Court need not conclusively determine whether the force crossed the constitutional line, because the "clearly established" prong is dispositive here. Even if one were to assume a Fourth Amendment violation for the sake of argument, the officers are still entitled to immunity because the law in September 2022 did not clearly establish that using a Taser on an actively resisting arrestee was unlawful.

In *Abbott v. Sangamon County*, the 7th Circuit held that officers were entitled to qualified immunity where the plaintiff was actively resisting arrest. 705 F.3d 706 (7th Cir. 2013). The Court held that there was no clearly established law that prohibited using a Taser on a suspect who, "is actively resisting, even if relatively minor resistance." *Id.* at 727-28. Similarly, in *Dockery v. Blackburn*, the plaintiff was tased four times within a matter of seconds where he was combative during a booking at a police station. 911 F.3d 458, 461 (7th Cir. 2018). The Seventh Circuit held that the officers were entitled to qualified immunity because the plaintiff was actively resisting. *Id.* at 467. Finally, in *Forrest v. Prine*, officers tased the plaintiff in a situation where the court described the situation as officers confronting a "defiant, belligerent, intoxicated pretrial detainee" in close quarters. 620 F.3d 739, 746 (7th Cir. 2010). The Court determined that under these circumstances, the plaintiff posed a threat to safety and order within the jail, and the use of the taser under the circumstances was warranted. *Id.* at 745.

The situation in the case at bar is like the *Forrest v. Prine* case because the officers were facing Plaintiff who was a defiant and belligerent individual on board the Metra train. **Def.'s 56.1 Stmt of Mat. Facts, ¶¶ 7, 9-10, 16-23.** The police officers were faced with Plaintiff's refusal to follow lawful commands to stand up and leave the train and were forced to attempt to remove the

Plaintiff from a tight space with a low ceiling, and with other passengers nearby on the Metra railcar. Officer Klima only tased Plaintiff after he defied Klima's commands, resisted the officers' attempt to use physical force to get Plaintiff off the railcar, and ignored multiple warnings that he would be tased if he continued to resist. **Def.'s 56.1 Stmt of Mat. Facts, ¶¶ 16-23.** Plainly then, if the officers in *Abbott*, *Dockery*, and *Forrest* are entitled to qualified immunity, then Officer Klima's use of the taser to gain Plaintiff's compliance is also entitled to qualified immunity.

In summary, given Plaintiff's active resistance, the officers could reasonably believe that the single Taser application was a lawful amount of force. There was no clearly established law to the contrary. Indeed, it bears repeating: the officers gave Plaintiff multiple warnings and chances to comply; only when he unequivocally refused and physically resisted did they resort to the Taser, and then only for one standard cycle. This measured response in a fluid situation is exactly the type of on-the-spot judgment call that qualified immunity is designed to protect. As of 2022, neither the Supreme Court nor the Seventh Circuit had compelled officers to forgo using a Taser in these circumstances. Therefore, Sgt. Klima (and Officers Abercrombie and Engle, who assisted) are entitled to qualified immunity on the excessive force claim.

### D. Conclusion

Facing a disruptive fare evader who defied lawful orders and physically resisted, Defendants Abercrombie, Klima, and Engle acted reasonably in the moment. The law at the time did not clearly establish that either (a) removing and arresting Plaintiff for non-payment and resistance, or (b) using a single Taser burst to subdue his active resistance, was unconstitutional. To the contrary, existing precedent would have signaled to a reasonable officer that such actions were permissible. Qualified immunity exists to protect officials who must make quick decisions

in borderline situations from the fear of litigation and liability when the law is not clearly settled against them.

Because Plaintiff cannot show the violation of a clearly established Fourth Amendment right, Defendants are shielded from suit. The Court should therefore grant summary judgment in favor of Defendants on Count I (unlawful seizure and excessive force under the Fourth Amendment) and dismiss those claims with prejudice.

## IV. Plaintiff's Malicious Prosecution Claim Must be Dismissed.

Illinois courts have long required a malicious prosecution plaintiff to strictly prove all elements of the tort: "(1) the commencement or continuance of an original criminal or civil judicial proceeding; (2) its legal causation by the present defendant; (3) a bona fide termination in favor of the plaintiff; (4) the absence of probable cause; (5) the presence of malice; and (6) damages." *Freides v. Sani-Mode Mfg. Co.*, 33 Ill. 2d 291, 295 (1965). Here, the record forecloses several of these required elements: in particular, Plaintiff cannot establish that the prosecution lacked probable cause, or that Defendants acted with malice. Because Plaintiff has "failed to establish the requisite elements for a malicious prosecution claim," judgment as a matter of law is warranted. *Denton v. Allstate Ins. Co.*, 152 Ill. App. 3d 578, 588 (1st Dist. 1986).

The absence of probable cause is indispensable element of malicious prosecution, and the record demonstrates the presence of probable cause for Plaintiff's arrest and charging. Probable cause justifies the institution of a criminal prosecution if the facts known would lead a reasonable person "to believe or entertain an honest and sound suspicion" that the accused committed an offense. *Mangus v. Cock Robin Ice Cream Co.*, 52 Ill. App. 3d 110, 116 (1st Dist. 1977). That standard was plainly met here. By Plaintiff's own admissions: (a) he admitted that the conductor told the dispatcher that Plaintiff was refusing to pay, and then (b) resisted multiple orders by

11

uniformed officers to leave the train, ultimately requiring the use of a Taser and physical force to remove him. **Def.'s 56.1 Stmt of Mat. Facts, ¶¶ 7, 9-10, 16-23.** Furthermore, Conductor Kuderna informed the police officers on the scene that the Plaintiff had threatened to "beat the shit out of him," and caused Kuderna to have a reasonable apprehension of receiving a battery. **Def.'s 56.1 Stmt of Mat. Facts, ¶¶ 9-10.** These facts gave officers a reasonable basis to suspect Plaintiff was guilty of theft of services, assault, and resisting a peace officer. Indeed, the decision to charge Plaintiff with those offenses was not only reasonable; it was correct under the circumstances. Because probable cause existed for each charge, Plaintiff failed to establish the lack of probable cause element required for his claim. *Denton*, 152 Ill. App. 3d at 582.

Finally, Plaintiff cannot show that Defendants acted with malice or initiated the prosecution for an improper purpose. In malicious prosecution, "malice" means more than just spite; it refers to any motive other than bringing a guilty party to justice. *Robinson v. Econ-O-Corp.*, 62 Ill. App. 3d 958, 961 (1st Dist. 1978). Plaintiff has adduced no evidence that Defendants bore him any personal ill-will or had any reason to want to harm him unjustly. On the contrary, the record shows Defendants treated this as a routine law enforcement matter: responding to a disturbance, verifying the facts, and effectuating an arrest supported by probable cause. There is simply no indication of any "improper purpose" such as personal animus, retaliation, or an attempt to cover up wrongdoing. Defendants derived no benefit from Plaintiff's prosecution; their only "motive" was to enforce Metra's rules and the law for the safety and order of the train. Moreover, because probable cause supported the charges, Illinois law dictates that malice cannot be inferred. *Mangus*, 52 Ill. App. 3d at 117; *Denton*, 152 Ill. App. 3d at 588 ("Where probable cause does exist, malice may not be inferred."). Plaintiff has identified no independent evidence of malice beyond the arrest itself. Under these circumstances, no reasonable jury could find that Defendants acted with the

malice required to substantiate Plaintiff's claim. See *Denton*, 152 Ill. App. 3d at 588, (reversing verdict where "a review of the record fails to disclose" evidence that defendant or its agents "acted with the requisite malice").

**V.        Count II – Indemnification Under 745 ILCS 10/9-102 Must Be Dismissed.**

Illinois law is clear that a public entity cannot be liable for indemnification where its employee is not liable. See 745 Ill. Comp. Stat. 10/2-109 ("A local public entity is not liable for an injury resulting from an act or omission of its employee where the employee is not liable."). Courts in this District routinely dismiss indemnification claims when the underlying claims are dismissed. See, e.g., *Yang v. City of Chicago*, 137 F.3d 522, 525 (7th Cir. 1998) (affirming dismissal of indemnification claim where no underlying liability was found).

Accordingly, because Plaintiff has failed to establish any constitutional violation by the individual defendants, there is no basis for indemnification under Illinois law. Summary judgment should be granted in favor of Defendant Metra on Count II.

WHEREFORE, the Defendants respectfully request that this Court enter and order granting the Defendants' Motion for Summary Judgment, dismissing the Plaintiff's case in its entirety with prejudice, and for any other relief that this Court deems just and appropriate.

Respectfully submitted,

NORTHEAST ILLINOIS REGIONAL COMMUTER RAILROAD CORP., JAMES KUDERNA, MARK ABERCROMBIE, JOSHUA KLIMA, and M. ENGLE,

By: */s/ Stephen G. Goins*_____

Attorney for Defendants

Stephen G. Goins – ARDC#: 6310890
**Metra Law Department**
547 West Jackson Boulevard - 15th Floor
Chicago, Illinois 60661
Telephone: 312.322.7073
sgoins@metrarr.com