| | |
|---|---|
| HAMBI CETEWAYO, | |
| Plaintiff, | |
| | No. 24 CV 5467 |
| v. | |
| | Judge Manish S. Shah |
| NORTHEAST ILLINOIS REGIONAL COMMUTER RAILROAD CORPORATION d/b/a METRA, et al., | |
| Defendants. | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Hambi Cetewayo was riding the Metra train home when the conductor came to his seat and asked to see his ticket. After plaintiff failed to produce a ticket, the two men got into a verbal altercation and the conductor sought assistance from Metra Police. Defendant-officers Joshua Klima, Mark Abercrombie, and Mark Engle responded to the call and boarded the train when it pulled into the Blue Island station a few minutes later. Cetewayo refused to exit the train and defendant Klima ultimately used his taser on plaintiff. Defendants escorted him off the train. Cetewayo alleges that his arrest and defendants' use of force violated his rights under § 1983. He also brings a state-law malicious prosecution claim. Defendants move for summary judgment. For the reasons discussed below, the motion is granted.

## I.    Legal Standards

Summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

matter of law. Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists if the evidence is such that a reasonable jury could return a verdict in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To determine whether summary judgment should be granted, I view all the facts and draw reasonable inferences in favor of the non-moving party. *See Sullivan v. Flora, Inc.*, 63 F.4th 1130, 1141 (7th Cir. 2023). The court gives the non-moving party "the benefit of reasonable inferences from evidence, but not speculative inferences in his favor." *White v. City of Chicago*, 829 F.3d 837, 841 (7th Cir. 2016) (internal citations omitted).

## II.    Local Rule 56.1 and Evidentiary Issues

Local Rule 56.1 "aims to make summary-judgment decisionmaking manageable for courts." *Kreg Therapeutics, Inc. v. VitalGlo, Inc..* 919 F.3d 405, 415 (7th Cir. 2019). The moving party must file a supporting memorandum of law and statement of facts demonstrating that it is entitled to judgment as a matter of law. *See Petty v. City of Chicago*, 754 F.3d 416, 420 (7th Cir. 2014); N.D. Ill. Local R. 56.1(a). The non-moving party must file a response to that statement and may provide a separate statement of additional facts. N.D. Ill. Local R. 56.1(b)(2)–(3).

Both the initial statements of facts and statements of additional facts must consist of concise numbered paragraphs, supported by citations to specific pages in the evidentiary record. *See* N.D. Ill. Local R. 56.1(a), (b)(3). The non-moving party must cite specific, admissible evidence to dispute an asserted fact and concisely explain how the cited material controverts the asserted fact. N.D. Ill. Local R.

56.1(b)(3). All material facts set forth in the moving party's statement will be deemed admitted unless controverted by the statement of the opposing party. *Id.*

Cetewayo did not file a response to defendants' statement of material facts. Though he filed his own "list of disputed facts," [65] at 3–4,[1] Cetewayo's statement reads as a narrative and does not cite to the evidentiary record. Although I am entitled to demand strict compliance with Local Rule 56.1, *see Coleman v. Goodwill Indus. of Se. Wis., Inc.*, 423 Fed. App'x 642, 643 (7th Cir. 2011), I will nevertheless generously construe the facts identified by plaintiff insofar as they are supported by the record. *See Gray v. Hardy*, 826 F.3d 1000, 1005 (7th Cir. 2016) (noting that courts may construe pro se submissions leniently). But assertions that Cetewayo did not properly controvert are deemed admitted.[2]

## III.    Facts

Riding a Metra train requires a valid ticket or payment of fare. [54] ¶ 8. Shortly after plaintiff Hambi Cetewayo boarded a Metra commuter train in September 2022, the train's conductor asked to see his ticket. [54] ¶¶ 5, 7. Plaintiff did not present a

---

[1] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings, except in the case of citations to depositions, which use the deposition transcript's original page number. Citations to video recordings use the minutes and seconds according to the digital file uploaded to the docket. The facts are largely taken from defendants' uncontested statement of facts, [54], plaintiff's deposition testimony, [54-2], and the video footage capturing the event, [58].

[2] If plaintiff had signed his statement of facts, then his statements would be admissible to the extent they rely on testimony within his personal knowledge. *See Payne v. Pauley*, 337 F.3d 767, 772 (7th Cir. 2003); *see also Price v. Fed. Bureau of Prisons*, 2022 WL 972294, at *4 (N.D. Ill. Mar. 31, 2022) ("[A]n unsworn declaration which is dated and signed by the declarant under penalty of perjury and verified as true and correct may be used, in lieu of a sworn affidavit, to support or respond for a motion to summary judgment." (citations and internal quotation marks omitted)). But plaintiff failed to submit a signature under penalty of perjury for his statement of facts and therefore his statements are not admissible.

valid ticket or proof of payment to the conductor when asked. [54] ¶ 7. According to Cetewayo, he had purchased a ticket before boarding the train but had some trouble pulling up the ticket on his phone. [54-2] at 27:14–15.

Plaintiff became agitated during his interaction with the conductor. [54] ¶ 9. He "started yelling" and used expletives. [54] ¶ 9; [54-2] at 27:25–28:5. The conductor feared that Cetewayo would use force against him and requested assistance from Metra Police. [54] ¶¶ 10–11; *see also* [54-3 Ex. A] at 1:13–1:16 (reporting that plaintiff was being combative and told the conductor, "fuck you").

The Metra Police dispatcher announced a call for service about a "combative subject, outbound passenger refusing to pay." [54] ¶ 12; *see also* [54-5 Ex. B] at 0:16–0:26. Defendants—Metra Police Sergeant Joshua Klima and Officers Mark Abercrombie and Mark Engle—responded to the call. [54] ¶ 13. The officers' body-worn cameras captured their interactions upon arriving at the scene.[3]

After the train pulled into the Blue Island station (approximately twelve minutes after the conductor requested assistance), defendants met the conductor on the platform, and he identified Cetewayo. [54] ¶ 15; [54-5 at Ex. A] (Klima BWC) at 1:02–1:12. The conductor then told them that Cetewayo had not paid the fare. Klima BWC at 1:14–1:16. On their way to the train, defendants also passed another

---

[3] The videos from the body-worn cameras of officer Barry Hobbs and defendant-officers Klima and Abercrombie were uploaded to the docket. The link to a fourth video, presumably from defendant Engle's body-worn camera, *see* [54-6], generated an error message. Therefore, I did not consider Engle's video. Plaintiff does not challenge Engle's declaration and there is no reason to believe that Engle's body-worn camera footage would shed additional light beyond what is captured in the other three videos.

passenger who warned them to "be careful, he's a little rowdy." [54] ¶ 14; [54-8 Ex. A] (Hobbs BWC) at 1:24–1:26.

When defendant Klima reached plaintiff's seat, he told Cetewayo to step off the train. Klima BWC at 1:17. Cetewayo refused and Klima said "I'm going to tase you if you don't get up." Klima BWC at 1:18–1:30. Cetewayo remained seated and said "so tase me." Klima BWC at 1:30–1:31.[4] Plaintiff continued telling Klima to tase him, even as defendant Engle took hold of plaintiff's arms to escort him up from the seat. [54] ¶ 19; Klima BWC at 1:38–1:43. Klima drew his taser, activated an electrical arc display, and again told Cetewayo to get up. [54] ¶ 22. When plaintiff remained seated, Klima fired one set of taser probes into plaintiff's torso region. [54] ¶ 24; [54-2] at 38:15–16 (stating he was struck with the taser in his right thigh).

While plaintiff was disoriented from the taser, the officers secured him in handcuffs. [54] ¶ 26. At this point, the taser was turned off and the officers escorted him off the train. [54] ¶ 27. Klima requested emergency medical services and an ambulance arrived to transport Cetewayo to the hospital. [54] ¶ 29. Once cleared from the hospital, plaintiff was taken to the Metra Police facility, where he was charged with offenses under Illinois law: theft of labor or services, aggravated assault of a transit employee, and resisting a peace officer. [54] ¶ 31. In May 2024, all charges stemming from this incident were dropped and dismissed *nolle prosequi*. [54] ¶ 32.

---

[4] Plaintiff admits that he did not comply with the officers' orders to get off the train. [65] at 4; [54-2] at 34:7–12.

Plaintiff brings claims under 42 U.S.C. § 1983 for excessive force and unlawful search and seizure. [1] ¶¶ 19–21. He also brings state-law claims for indemnification and malicious prosecution. [1] ¶¶ 22–24, 30–33.[5]

IV.     Analysis

A.      False Arrest and Malicious Prosecution

"The existence of probable cause is a defense to both Fourth Amendment and malicious prosecution claims." *Washington v. City of Chicago*, 98 F.4th 860, 863 (7th Cir. 2024). The question of whether an arrest is supported by probable cause is typically a question of fact decided by the jury. *Abbott v. Sangamon Cnty.*, 705 F.3d 706, 714 (7th Cir. 2013). But a court may make the determination at summary judgment when the underlying facts are undisputed. *Madero v. McGuinness*, 97 F.4th 516, 522 (7th Cir. 2024).

An officer has probable cause to arrest an individual when "the totality of the circumstances known to the officer at the time of the arrest would warrant a reasonable person in believing that the arrestee had committed … a crime." *Gutierrez v. Kermon*, 722 F.3d 1003, 1008 (7th Cir. 2013). The probable-cause standard is not a high bar and "inherently allows room for reasonable mistakes." *Id.*; *see also Kaley v. United States*, 571 U.S. 320, 338 (2014).

"[A]n arrest can be supported by probable cause that the arrestee committed any crime, regardless of the officer's belief as to which crime was at issue." *Abbott*,

---

[5] The court previously dismissed plaintiff's claim for intentional infliction of emotional distress as well as the Fourth Amendment claims brought against the conductor. [20].

705 F.3d at 715. However, in the malicious prosecution context, Illinois courts define probable cause "as a state of facts that would lead a reasonably cautious person to believe … that the person committed the offense charged." *Beaman v. Freesmeyer*, 183 N.E.3d 767, 789 (Ill. 2021).

Defendants argue that they had "ample probable cause" to arrest Cetewayo for fare evasion, breach of the peace, and obstruction. [55] at 5. They assert that both the conductor's report of the incident and their own interactions with plaintiff on the train support a finding of probable cause. [55] at 5. In response, plaintiff contends that defendants did not have probable cause to remove him from the train because he had a ticket. [66] at 1. He does not cite to legal authority in support of this position. Moreover, plaintiff does not challenge defendants' probable cause analysis regarding the breach of peace and obstruction offenses. [66]. And nor could he. The undisputed facts establish that defendants had probable cause to seize Cetewayo for all three charged offenses.

### 1.    *Theft of Services*

In Illinois, an individual commits theft when he "knowingly obtains the temporary use of property, labor or services of another which are available only for hire, by means of threat or deception or knowing that such use is without the consent of the person providing the property, labor or services." 720 ILCS 5/16-3(a). Defendants argue that they had probable cause to believe that Cetewayo was riding the Metra train without a ticket and were therefore justified in removing him from the train. [55] at 5.

I agree. The conductor—an individual who had personally interacted with Cetewayo and whose job it was to check tickets—reported several times that plaintiff had failed to produce a ticket. The officers learned of the conductor's reports through both direct and indirect means: First, the officers were present at the scene because the conductor called the Metra Police to help address a combative rider. [54] ¶¶ 10–11. Second, when defendants boarded the train, the conductor reported directly to them that Cetewayo had not paid the fare. Klima BWC at 1:14–1:16.

Whether or not Cetewayo possessed a valid train ticket is immaterial. "A police officer has probable cause to arrest when, at the moment the decision is made, the facts and circumstances within [his] knowledge and of which [he] has reasonably trustworthy information would warrant a prudent person in believing that the suspect had committed or was committing an offense." *Fleming v. Livingston Cnty.*, 674 F.3d 874, 878–79 (7th Cir. 2012) (citation omitted). This standard "does not require that the officer's belief be correct or even more likely true than false, so long as it is reasonable." *Id.* The conductor's firsthand report of fare evasion was sufficient to render the seizure reasonable.

### 2. *Aggravated Assault of a Transit Employee*

Defendants similarly had probable cause to arrest Cetewayo for aggravated assault of a transit employee. In Illinois, a person commits assault when, without lawful authority, he "knowingly engages in conduct which places another in reasonable apprehension of receiving a battery." 720 ILCS 5/12-1. Aggravated assault

occurs when the assault is committed against certain classes of people, including transit employees performing their official duties. 720 ILCS 5/12-2(b)(8).

Here, it is undisputed that the conductor was a transit employee performing his official duties when he asked for plaintiff's ticket. Further, plaintiff admits that he yelled and used expletives during his interaction with the conductor. [54-2] at 27:25–28:5. In addition to the dispatch call, which informed defendants that Cetewayo was being combative and refusing to pay, [54-5 Ex. B] at 0:16–0:26, the officers were also informed by another rider when walking up to the train that Cetewayo was "a little rowdy" and they should be careful. Hobbs BWC at 1:24–1:26.

This is all bolstered by defendants' own interactions with Cetewayo leading up to the arrest, where plaintiff refused to comply with their orders that he exit the train and presented as visibly irritated. Klima BWC at 1:16–1:30. By the time Klima drew his taser, the facts and circumstances known to him reasonably supported a belief that Cetewayo had threatened the conductor and placed him in reasonable apprehension of receiving a battery (i.e., that Cetewayo had committed aggravated assault). *See Braun v. Vill. of Palatine*, 56 F.4th 542, 548 (7th Cir. 2022).

### 3. *Resisting a Police Officer*

Finally, defendants had probable cause to arrest Cetewayo for obstruction. In Illinois, it is a crime for a person to knowingly resist arrest. 720 ILCS 5/31-1. As explained above, Klima asked Cetewayo to exit the train several times before informing plaintiff that he would tase him if he refused to get up. Klima BWC at 1:16–1:30. Rather than obeying, plaintiff invited Klima to tase him. Klima BWC at

9

1:30–1:35. Given Cetewayo's behavior, as directly observed by the officers, defendants reasonably believed that plaintiff had committed the Illinois offense of obstruction. *See Braun*, 56 F.4th at 550.

The officers had probable cause to arrest Cetewayo for all three charged offenses.[6] Defendants' motion for summary judgment on plaintiff's Fourth Amendment seizure and state-law malicious prosecution claims is granted.

## B.    Excessive Force

Defendants also move for summary judgment on Cetewayo's excessive force claim. "[T]he lawfulness of an arrest is irrelevant to an excessive force analysis." *Sebright v. City of Rockford*, 585 Fed. App'x 905, 907 (7th Cir. 2014). "A seizure without probable cause is conceptually different from a seizure that employs excessive force; both are unreasonable, but for different reasons." *Carlson v. Bukovic*, 621 F.3d 610, 622 n.19 (7th Cir. 2010). In contrast to a Fourth Amendment claim for false arrest, lack of probable cause is not dispositive of reasonableness. *See id.* Instead, excessive force claims must be evaluated under the totality of the circumstances test from *Graham v. Connor*, 490 U.S. 386, 395 (1989). *Id.*

*Graham*'s reasonableness test "requires a careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the

---

[6] Even if defendants did not have probable cause to arrest Cetewayo, they would have qualified immunity because they had arguable probable cause. Qualified immunity shields officers from liability if "a reasonable officer in the same circumstances and possessing the same knowledge as the officer in question could have reasonably believed that probable cause existed in light of well-established law." *Mwangangi v. Nielsen*, 48 F.4th 816, 825 (7th Cir. 2022). To the extent there is some room for debate, the officers were at worst reasonably mistaken that Cetewayo had committed the charged offenses.

10

countervailing governmental interests at stake." *Graham*, 490 U.S. at 396 (quoting *Tennessee v. Garner*, 471 U.S. 1, 7–8 (1985)). The relevant factors under *Graham* are (1) the severity of the crime at issue; (2) whether the suspect poses an immediate threat to the safety of the officers or others; and (3) whether the suspect is actively resisting arrest or attempting to evade arrest by flight. *Id.*

Here, defendants argue that "the decision to use a single Taser deployment to gain control of Plaintiff was a reasonable amount of force." [55] at 8. They note that though plaintiff did not brandish a weapon or strike the officers, "he was verbally hostile and physically uncooperative in a passenger railcar"—a confined space with other passengers nearby. [55] at 7. Defendants also argue that plaintiff's active resistance supported their use of force. [55] at 8. In response, plaintiff contends that he was "passively non-compliant" and therefore defendants' use of a taser was excessive in those particular circumstances. [66] at 2–3.

 "[I]t may be unreasonable to use a taser against suspects that are passively noncompliant or uncooperative but subdued." *Snukis v. Taylor*, 145 F.4th 734, 740 (7th Cir. 2025) (citing *Abbott*, 705 F.3d at 727–28). In *Abbott*, for example, the court found that an individual subdued by a first tasing—such that she made no movement after the first tasing ended—had a viable excessive force claim when the officers proceeded to tase her a second time. 705 F.3d at 733.

But "courts have generally held that it can be appropriate to use tasers against suspects who are actively resisting officers." *Snukis*, 145 F.4th at 740. In *Dockery v. Blackburn*, for example, the court concluded that officers had not used excessive force

11

when they tased an individual several times who "had not submitted to the officers' authority and was far from subdued." 911 F.3d 458, 468 (7th Cir. 2018). Similarly, the court found the use of a taser to be reasonable in *Snukis* where the plaintiff had several opportunities to comply with the officers' commands and nevertheless refused. *See* 145 F.4th at 741; *see also Forrest v. Prine*, 620 F.3d 739, 745 (7th Cir. 2010) (finding no excessive force where an officer employed a taser after the plaintiff failed to heed his several warnings that noncompliance would result in tasing). Indeed, courts are hesitant to second guess an officer's split-second judgments about the amount of force that is necessary "in circumstances that are tense, uncertain, and rapidly evolving." *Graham*, 490 U.S. at 396–97.

This case is more like *Dockery* than *Abbott*. The video footage unambiguously shows that Cetewayo was neither passive nor compliant. The officers gave him several chances to exit the train out of his own volition, but plaintiff instead braced himself against the seat and refused to stand. [54] ¶ 20. As stated by plaintiff: "I did not comply with orders to get off the train." [65] at 4. Plaintiff's size and positioning in the seat made it difficult for the officers to lift or move him. [54] ¶ 20. The officers' use of less forceful means had failed, and the use of a single taser deployment was reasonable in these circumstances.[7]

---

[7] Even if defendants committed a Fourth Amendment violation, they are once again entitled to qualified immunity. The qualified immunity doctrine gives "enhanced deference to officers' on-scene judgments about the level of necessary force." *Dockery*, 911 F.3d at 466 (quoting *Abbott*, 705 F.3d at 725). The officers' behavior was not "so egregious and unreasonable that … no reasonable officer could have thought he was acting lawfully." *Id.*

Defendants' motion for summary judgment on plaintiff's Fourth Amendment excessive force claim is granted.

Finally, a public entity cannot be liable for indemnification where its employee is not liable. *See* 745 ILCS 10/2-109. Because plaintiff has not established a constitutional or state-law violation by any individual defendant, there is no basis for indemnification. Defendants' motion for summary judgment on Count II is granted.

## V. Conclusion

Defendants' motion for summary judgment, [53], is granted. Enter judgment and terminate civil case.

ENTER:

_____
Manish S. Shah
United States District Judge

Date: May 27, 2026